484 So.2d 1351 (1986)
DATAMATIC SERVICES CORPORATION, Appellant,
v.
Paul BESCOS, Appellee.
No. 85-1039.
District Court of Appeal of Florida, Second District.
March 12, 1986.
*1352 William Randolph Klein of Law Offices of William Randolph Klein, P.A., Sarasota, for appellant.
James E. Aker of Icard, Merrill, Cullis, Timm and Furen, P.A., Sarasota, for appellee.
LEHAN, Judge.
This appeal involves whether a contractual choice of forum clause is enforceable. Plaintiff, a Florida corporation, sued defendant, a California resident, on a promissory note. The note represented the balance of the purchase price of equipment sold by plaintiff to defendant. Plaintiff appeals the suit's dismissal which was principally on grounds of lack of personal jurisdiction over defendant. The trial court ruled that a provision in the sales contract between plaintiff and defendant agreeing to jurisdiction in the courts of Florida over any litigation arising from the contract was void and unenforceable. We reverse. We hold that the provision was valid and enforceable.
Plaintiff, Datamatic Services Corporation, the Florida corporation, sold medical equipment to defendant, Paul Bescos, the California resident. As consideration Bescos executed the promissory note payable to Datamatic. We conclude that the provision in their sales contract agreeing to Florida jurisdiction was freely negotiated because Bescos has not shown otherwise. The provision, Article XV of the contract, reads as follows:

*1353 Governing Law and Jurisdiction
This Agreement shall be deemed to have been made and shall be construed and enforced in accordance with the laws of the State of Florida. The parties hereto consent and by the execution hereof submit themselves to the jurisdiction of the courts of the State of Florida for any litigation arising from this Agreement.
A dispute apparently arose between the parties. Datamatic filed this suit against Bescos in Florida alleging his nonpayment of the promissory note. Upon motion by Bescos, the trial court dismissed the suit, specifying several grounds, including that Article XV was void and unenforceable and that the courts of Florida were without jurisdiction. For the reasons explained below, we disagree with those grounds. An additional ground for the dismissal was that Bescos had filed suit against Datamatic in California for rescission of the contract. But there has been no showing of personal jurisdiction over Datamatic in the California courts. Although Bescos' California complaint was filed before this suit was filed, it has not been shown that there has been service of process of any kind against Datamatic in the California suit. In fact, the record indicates that there has been no such service.
The remainder of this opinion, which is an analysis of a fairly involved subject, is broadly summarized in this paragraph as follows. We will first explain why none of the Florida case law cited in this opinion on the subject of contractual choice of forum clauses, which contains conflict between the Third and Fourth District Courts of Appeal, is, in the final analysis, inconsistent with our holding in this case. That conflict is in cases involving so-called "mandatory jurisdiction" clauses and does not involve the "permissive jurisdiction" type of contractual choice of forum clause which is in issue here. Mandatory jurisdiction clauses require that only a particular forum have jurisdiction while permissive jurisdiction clauses merely agree to such jurisdiction and do not purport to exclude the jurisdiction of another forum. But, cases from both the Third and Fourth Districts cite a landmark United States Supreme Court case upon which we rely. Since the rationale of that case upon which we rely is also the rationale of the Fourth District which, based upon that case, supports enforcement of mandatory jurisdiction clauses, whereas the rationale of the Third District which declines to enforce that type of clause is not, we should, and will, address the conflict between those courts. In doing so we will point out (a) why we believe the Third District seems to have unjustifiably disregarded that Supreme Court case; (b) why the Fourth District with which we basically agree may nonetheless have overlooked the distinction between the permissive jurisdiction type of clause in issue here and the mandatory jurisdiction clauses involved in those Third and Fourth District cases; and (c) why the basis for enforcing the mandatory jurisdiction type of choice of forum clauses which were involved in those Third and Fourth District cases should be no different from the basis for enforcing the permissive jurisdiction type of clause in this case. We will then explain why no contractual choice of forum clause of whatever type is necessarily enforceable but that none of the exceptions established by the United States Supreme Court to the general rule, or presumption, that such clauses are enforceable applies here. We will also deal with why the law applicable in this type of personal jurisdiction appeal is essentially contract law, not constitutional due process law or the law involving the doctrine of forum non conveniens.
Having summarized, we begin our analysis. The well presented argument of Bescos cites case law in the Third District holding that contract clauses requiring that jurisdiction be only in a particular state are void because they purport to oust the jurisdiction of another forum. E.g., Zurich Insurance Co. v. Allen, 436 So.2d 1094 (Fla. 3d DCA 1983); Huntley v. Alejandre, 139 So.2d 911 (Fla. 3d DCA 1962), cert. denied, 146 So.2d 750 (1962). The Fourth District has disagreed with the Third District and has held that such clauses may be enforceable. *1354 Maritime Limited Partnership v. Greenman Advertising Associates, Inc., 455 So.2d 1121, 1123 (Fla. 4th DCA 1984). See also McRae v. J.D./M.D., Inc., 481 So.2d 945 (Fla. 4th DCA 1985). Maritime, in light of its conflict with those Third District cases, certified to the Florida Supreme Court the question which the Fourth District perceived to arise from that conflict. 455 So.2d at 1124. But we have been informed that Maritime was not taken to the Florida Supreme Court. Bescos argues that Maritime was wrong. However, it is not absolutely necessary that we take a side in that conflict in order to decide this case because those cases do not involve the type of contractual agreement involved here. Article XV of the Datamatic-Bescos agreement does not purport to oust the jurisdiction of any court and therefore does not involve the foregoing basis for those Third District decisions. The effect of that Article is only to provide that Florida may be the forum for any litigation arising out of the contract.
Accordingly, we recognize a distinction between, on the one hand, so-called "mandatory jurisdiction" clauses in contracts which require that a particular forum be the exclusive jurisdiction for litigation concerning the contract (the type of clause in each of those Third District and Fourth District cases) and, on the other hand, so-called "permissive jurisdiction" clauses which only provide that there may be jurisdiction over such litigation in a particular forum (the type of clause in this case). Article XV provides that the parties "submit themselves to the jurisdiction of the courts of the State of Florida for any litigation arising from this Agreement" and does not provide that there may not be jurisdiction of the courts of another state over that litigation. Therefore, the effect of Article XV was simply to remove the necessity for the acquisition of personal jurisdiction in Florida over a party to the contract under otherwise applicable due process standards. The clause did not purport to exclude another state's exercise of personal jurisdiction acquired by proper service. See Gruson, Forum-Selection Clauses in International and Interstate Commercial Agreements, 1982 U.Ill.L.Rev. 133, 134 n. 3 (1982), citing numerous federal and state cases concluding that particular clauses in contracts selecting one forum do not exclude another forum unless they provide that the selected forum shall be the only forum. See also Keaty v. Freeport Indonesia, Inc., 503 F.2d 955 (5th Cir.1974); First National City Bank v. Nanz, Inc., 437 F. Supp. 184 (S.D.N.Y. 1975). Citro Florida, Inc. v. Citrovale, S.A., 760 F.2d 1231 (11th Cir.1985), illustrates that debatable questions can arise in this regard. The clause in that case said, "Place of jurisdiction is Sao Paulo/Brazil." The Citro majority concluded that the clause was a permissive, "mere `consent to jurisdiction,'" clause because it did not say that Sao Paulo was to be the only place of jurisdiction. 760 F.2d at 1231-32. The dissent in Citro concluded that the clause was mandatory as to jurisdiction in Sao Paulo because "Place is singular. Is is singular." 760 F.2d at 1232.
None of the above cited Third and Fourth District cases refers to the distinction between mandatory and permissive jurisdiction clauses. Maritime might be interpreted to have overlooked that distinction. We believe Maritime involved a mandatory jurisdiction clause, and we conclude that the Fourth District also implicitly considered the clause with which it dealt in that case to be mandatory. The Fourth District said that Maritime was apparently in conflict with those Third District cases. 455 So.2d at 1123. Unless Maritime was thought by the Fourth District to involve the mandatory jurisdiction type of clause which unquestionably was involved in those Third District cases, Maritime would not have been thought to be in conflict with those cases. Two contracts were involved in Maritime. One provided that "all issues would be resolved at a forum situated `mid-way between Myrtle Beach [South Carolina] and Hollywood [Florida],'" which the Fourth District deemed absurd. The other contract provided that "jurisdiction for any litigation arising under this agreement *1355 shall lie within the appropriate court in Broward County, Florida." 455 So.2d at 1122. We base our conclusion that the latter clause was mandatory principally upon the words "any litigation" and "shall." However, in certifying the question in that case to the Florida Supreme Court, the Fourth District phrased the question as involving a permissive jurisdiction clause ("Can parties to a contract agree therein to submit to the jurisdiction of a chosen forum ...?" 455 So.2d at 1124). We recognize that an argument can be made, pursuant to the foregoing type of approach by the Citro majority, that Maritime involved a permissive jurisdiction clause. If Maritime did involve a permissive jurisdiction clause, then Maritime would provide even more direct authority for our holding in the case at hand.
The conclusion that Article XV is a permissive and not a mandatory jurisdiction clause and is enforceable is consistent with a subsequent case in the Third District which, however, did not spell out, as has been done above, the difference between the two types of clauses. In Manrique v. Fabbri, 474 So.2d 844 (Fla. 3d DCA 1985), the Third District construed a clause which, in pertinent part, was almost identical to the clause in the case at hand and provided that the parties "submit themselves" to the jurisdiction of a particular forum outside the state of Florida. The effect of the Third District's opinion was that Florida had not failed to acquire personal jurisdiction against the defendant in that case notwithstanding the agreement that jurisdiction in the other forum would be proper. The court pointed out that such a contract clause was simply an agreement not to contest the jurisdiction of the courts of a particular forum if suit was brought in that forum. Manrique referred to the conflict between Maritime, on the one hand, and Zurich and Huntley, on the other, but declined an invitation to revisit Zurich and Huntley.
In finding the permissive jurisdiction clause in the case at hand to be enforceable we follow a basic rationale of the Fourth District in Maritime and McRae, which seems applicable to both mandatory and permissive jurisdiction clauses and which is not inconsistent with the Third District's opinion in Manrique. That rationale is that parties which by contract agree to the jurisdiction of a particular forum must abide by their contract when suit is filed in that forum except, according to the Fourth District in certain types of unusual circumstances. According to the Third District in Zurich and Huntley, an exception exists when the contract purports to oust the jurisdiction of another forum. We have pointed out that that Third District exception could not apply here. As explained further below, the types of unusual circumstances referred to by the Fourth District do not apply here.
In deciding that personal jurisdiction may be vested in the courts of a particular forum by contract, we, as did the Fourth District in Maritime, follow the rationale of the landmark United States Supreme Court opinion in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). M/S Bremen, which dealt with a mandatory jurisdiction clause, held that freely negotiated contract clauses requiring that litigation concerning the contract be under the jurisdiction of a particular forum are valid if certain types of unusual circumstances (the same as those referred to in Maritime), or provisos, set forth in that case do not apply. One of those provisos which, as we shall explain, merits discussion but does not apply in the case at hand was that the selected forum may not be, with respect to a contracting party, "seriously inconvenient for the trial of the action." 407 U.S. at 16, 92 S.Ct. at 1916, 32 L.Ed.2d at 524 (emphasis by Supreme Court).
M/S Bremen was an admiralty suit involving an international contract. But Maritime and McRae, which followed M/S Bremen, were not admiralty cases and involved contracts between United States parties. The weight of authority appears to be consistent with our conclusion, and that in Maritime and McRae, that the application of M/S Bremen should not be *1356 limited to admiralty cases involving international contracts. "Federal courts have universally agreed that the teaching of Bremen is not limited to admiralty cases nor to cases involving the selection of a foreign forum but applies to all forum-selection clauses even if they select a domestic forum and even if they arise in a suit between parties of different states. Moreover, a number of states have expressly followed Bremen." Gruson, supra, at 149-50 (footnotes omitted).
In M/S Bremen the Supreme Court indicated the basis for enforcing contractual choice of forum clauses and denounced the rationale behind cases holding mandatory jurisdiction clauses to be unenforceable.
The choice of that [contractually agreed upon] forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts.
The argument that such clauses are improper because they tend to "oust" a court of jurisdiction is hardly more than a vestigial legal fiction. It appears to rest at core on historical judicial resistance to any attempt to reduce the power and business of a particular court and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets. It reflects something of a provincial attitude regarding the fairness of other tribunals. No one seriously contends in this case that the forum-selection clause "ousted" the District Court of jurisdiction over Zapata's action.
407 U.S. at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 521. Again, the case at hand does not involve a mandatory jurisdiction clause, but if a mandatory jurisdiction clause is enforceable as the Supreme Court says it is, then certainly a permissive jurisdiction clause is enforceable. That is, if a mandatory jurisdiction clause which requires litigation in a particular forum and may be said to have the effect of ousting the jurisdiction of any other forum  the effect found objectionable by the Third District in Zurich and Huntley  is enforceable, then a fortiori, the permissive jurisdiction clause in this case which does not have that effect must be enforceable. Furthermore, the foregoing basis for enforcing contractual choice of forum clauses, while set forth by the Supreme Court in a mandatory jurisdiction clause case, should be, and we believe is, no different from that for enforcing permissive jurisdiction clauses. Cases dealing with both types of clauses involve the same issue of whether personal jurisdiction in a particular forum may be conferred by contract. As we have indicated, our only reason for drawing a distinction between the two types of clauses has been to show that we are not in direct conflict with Third District cases concerning contractual choice of forum clauses.
Another Third District case which held that a mandatory jurisdiction clause was unenforceable contains language which says that personal jurisdiction can never be conferred by contract. "[P]arties to a contract cannot confer jurisdiction on a particular court by contract... ." Sausman Diversified Investments, Inc. v. Cobbs Co., 208 So.2d 873, 875 (Fla. 3d DCA 1968). Maritime said that, in light of other factors and language in Third District cases, the Fourth District was not certain that that Sausman language was meant to be as unequivocal as it sounded but that if it was, then the Fourth District disagreed. 455 So.2d at 1123. We agree with the Fourth District in that regard.
The M/S Bremen basis for upholding choice of forum clauses was reflected in Maritime:
In these frenetic days of jet travel, satellite communication and the like, inter-state contracts between corporations are commonplace. Absent a statute to the contrary, and if such contracts are entered into at arms length with equal bargaining power and partial performance is called for in both states, we can perceive no public policy against the contracting parties designating the home state of one of two corporations as the *1357 forum for ensuing litigation. Indeed, a conclusion to the contrary does not appear to serve any purpose other than to provide procedural loopholes through which one of the contracting parties can use dilatory tactics to escape clearly entered into obligations.
455 So.2d at 1123.
Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), is additional authority for upholding the enforceability of mandatory and permissive choice of forum clauses in contracts. In that case the Supreme Court affirmed lower court conclusions that personal jurisdiction over foreign corporations existed in a United States federal district court. The holding was that a court-imposed sanction against a party to a lawsuit for violating discovery orders dealing with matters of personal jurisdiction over that party may, without violating due process, be properly imposed so as to regard the facts sought to be discovered as established for the purpose of finding personal jurisdiction over that party. While the Supreme Court did not directly rely for its affirmance upon the contract clauses in that case in which the foreign parties agreed to the jurisdiction of American courts,[1] the Supreme Court took great pains to spell out principles of law which would support the enforceability of those clauses and which would appear to have been a potential alternate ground for affirming the exercise of personal jurisdiction. The very length of what seems to have been dicta in Insurance Corp. of Ireland to that effect, which we quote further below in full, emphasizing the most significant portion, seems indicative of the intended force of the Supreme Court's pronouncements in that regard which were phrased as reflecting well understood and established legal concepts.
Another reason for our fully quoting that Insurance Corp. of Ireland dicta is to contrast the Supreme Court's statements of the law in that case, as well as those in M/S Bremen quoted above, with the position of the Third District Court of Appeal that contractual mandatory jurisdiction clauses, and perhaps all contractual choice of forum clauses, are unenforceable. We have pointed out that the Third District cases taking that position are not actually in direct conflict with our holding in this case because those cases involved mandatory jurisdiction clauses. Nonetheless, as we have said, we base our holding in this case to a substantial extent on M/S Bremen. Therefore, we should address what seems to be a perplexing contrast between those Third District cases and not only M/S Bremen but also Insurance Corp. of Ireland In Zurich the Third District cited, but did not follow, M/S Bremen. In M/S Bremen the Supreme Court held that contractual mandatory jurisdiction clauses are enforceable, but Zurich held that such clauses are not enforceable. A conceivable unspoken justification for what thereby seems to have been a disregard by the Third District for M/S Bremen might have been, as we have noted above, the facts that M/S Bremen was an admiralty case and involved an international contract. But Zurich appears to have also involved an international contract, and, as we have said and for which we have cited substantial authority, those facts in M/S Bremen do not materially distinguish M/S Bremen from the type of case before us. We believe the Supreme Court's dicta in Insurance Corp. of Ireland should lay to rest any possible misconception that the types of principles which had been expressed by the Supreme Court in M/S Bremen do not apply to a nonadmiralty, domestic contract case between United States parties like this case. Insurance Corp. of Ireland should also, we believe, lay to rest any misconception that M/S Bremen should not apply to a case like Zurich.
*1358 That Insurance Corp. of Ireland dicta not only may be taken to support the conclusion that the teachings of M/S Bremen should not be limited to admiralty cases involving international contracts but also contains wording supporting state jurisprudence, such as our holding in this case, to the effect that a defendant's consent to the jurisdiction of a state court may be found to be binding. It seems very possible that the Supreme Court, which thereby dealt at length with the subject of consent to jurisdiction, used only dicta to not detract from the importance of its above described holding in that case which was newly established as to another aspect of personal jurisdiction. That dicta reads as follows:
Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived. In McDonald v. Mabee, supra, [243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1917)] the Court indicated that regardless of the power of the State to serve process, an individual may submit to the jurisdiction of the court by appearance. A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court. In National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 316, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964), we stated that "parties to a contract may agree in advance to submit to the jurisdiction of a given court," and in Petrowski v. Hawkeye-Security Co., 350 U.S. 495, 76 S.Ct. 490, 100 L.Ed. 639 (1956), the Court upheld the personal jurisdiction of a District Court on the basis of a stipulation entered into by the defendant. In addition, lower federal courts have found such consent implicit in agreements to arbitrate. See Victory Transport Inc. v. Comisaria General de Abastecimientos y Transportes, 336 F.2d 354 (CA2 1964); 2 J. Moore & J. Lucas, Moore's Federal Practice ¶ 4.02[3], n. 22 (1982) and cases listed there. Furthermore, the Court has upheld state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures. See Adam v. Saenger, 303 U.S. 59, 67-68, 58 S.Ct. 454, 458, 82 L.Ed. 649 (1938) ("There is nothing in the Fourteenth Amendment to prevent a state from adopting a procedure by which a judgment in personam may be rendered in a cross-action against a plaintiff in its courts ... It is the price which the state may exact as the condition of opening its courts to the plaintiff"); Chicago Life Ins. Co. v. Cherry, 244 U.S. 25, 29-30, 37 S.Ct. 492, 493, 61 L.Ed. 966 (1917) ("[W]hat acts of the defendant shall be deemed a submission to [a court's] power is a matter upon which States may differ"). Finally, unlike subject-matter jurisdiction, which even an appellate court may review sua sponte, under Rule 12(h), Federal Rules of Civil Procedure, "[a] defense of lack of jurisdiction over the person... is waived" if not timely raised in the answer or a responsive pleading.
In sum, the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue. These characteristics portray it for what it is  a legal right protecting the individual. The plaintiff's demonstration of certain historical facts may make clear to the court that it has personal jurisdiction over the defendant as a matter of law  i.e., certain factual showings will have legal consequences  but this is not the only way in which the personal jurisdiction of the court may arise. The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not.
456 U.S. at 703, 102 S.Ct. at 2105, 72 L.Ed.2d at 502 (emphasis added). See Shawmut Boston International Banking Corp. v. Duque-Pena, 767 F.2d 1504 (11th Cir.1985), where the Eleventh Circuit relied upon Insurance Corp. of Ireland in affirming a federal district court's exercise of personal jurisdiction. "[T]he Court there [in Insurance Corp. of Ireland] expressly noted that assertion of jurisdiction over a *1359 defendant would also be proper where `parties to a contract ... agree in advance to the jurisdiction of a given court.'" 767 F.2d at 1507. See also National Service Industries, Inc. v. Vafla Corp., 694 F.2d 246, 249 (11th Cir.1982), where the Eleventh Circuit also used Insurance Corp. of Ireland as authority for the validity of personal jurisdiction by contractual consent.
The United States Supreme Court has recognized a variety of legal arrangements as representative of consent to personal jurisdiction. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee [citations omitted]. Advance consent to the jurisdiction of a particular court in a contract is one such arrangement.
Id. Neither Shawmut nor National Service, in finding a contractual choice of forum clause to be enforceable, discussed any distinction in that regard between mandatory and permissive jurisdiction clauses.
As we have pointed out, the Fourth District has held that a contract selecting a particular forum for jurisdiction of litigation arising out of the contract (a mandatory jurisdiction clause in Maritime) is binding except in unusual circumstances. We agree. Those circumstances were established by the Supreme Court in M/S Bremen and are reflected in Maritime as follows:
[I]n personam jurisdiction can be conferred by consent even though no cause of action exists when the contract is entered into, providing that:
1. The forum was not chosen because of overwhelming bargaining power on the part of one party which would constitute overreaching at the other's expense.
2. Enforcement would not contravene a strong public policy enunciated by statute or judicial fiat, either in the forum where the suit would be brought, or the forum from which the suit has been excluded.
3. The purpose was not to transfer an essentially local dispute to a remote and alien forum in order to seriously inconvenience one or both of the parties.
455 So.2d at 1123. We have noted that that third proviso does not apply here. Nor, as is explained below, do any of those provisos apply to this case.
As to the first of those provisos, there has been no showing that Florida was chosen as a forum because of overwhelming bargaining power or overreaching by Datamatic. Bescos asserts generally in this case that there were misrepresentations which caused him to enter into the purchase. He alleged in his complaint which was filed in California that he purchased the equipment for use in his California business. That complaint alleges that misrepresentations were made to him to the effect that the equipment would produce enough income to pay for his installment purchase payments for the equipment. But a mere allegation that a contract was based upon fraud does not render a forum selection clause in that contract unenforceable. Under those types of circumstances, the clause is unenforceable only "if the inclusion of that clause in the contract was the product of fraud or coercion." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270, 281 n. 14 (1974) (emphasis by the Supreme Court).
As to the second of those provisos, we find no public policy of Florida against enforcing Article XV. To the contrary, Maritime reflects a Florida policy favoring such enforcement except in the unusual circumstances reflected in the M/S Bremen provisos. Bescos has described to us no California case expressing a California public policy opposing the enforcement of a contract clause of this type providing for jurisdiction by a court of another state over a California resident. In any event, we do not conclude that any such California public policy would be determinative. Also, as indicated above and further explained below, there is no showing that the California court in which Bescos filed his complaint has acquired personal jurisdiction through *1360 any type of service of process upon Datamatic.
As to the third of those provisos, it has not been shown that Florida is such a remote and alien forum as to "seriously inconvenience" Bescos within the meaning given to that term by the Supreme Court. M/S Bremen assigned and defined the burden of establishing the "serious inconvenience" which would prevent enforcement of a contractual choice of forum clause as follows: "[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." 407 U.S. at 18, 92 S.Ct. at 1917, 32 L.Ed.2d at 525. The University of Illinois Law Review article which we have cited mentions a refusal of the contractually selected forum to entertain jurisdiction as an example (certainly an extreme example) of the type of serious inconvenience for trial referred to in M/S Bremen which would deprive a party of his day in court. Gruson, supra, at 182. Accordingly, it should be kept in mind that the mere existence of factors which might seem to justify a particular forum's relinquishment of jurisdiction to another forum under the doctrine of forum non conveniens, which was raised by Bescos in this case, would not suffice to require that a contractually agreed upon forum, pursuant to the third M/S Bremen proviso, decline to exercise its jurisdiction.[2] Many forum non conveniens types of factors appear to exist here, as we shall indicate in the following paragraph for the purpose of emphasizing principles applicable in this case which are separate and apart from forum non conveniens and upon which we rely in upholding Florida jurisdiction.
Apparently Florida was involved in the transaction between Bescos and Datamatic only to the extent that Datamatic is a Florida corporation and the sales contract documents were received and signed by Datamatic in Florida. The substantial part of Datamatic's primary performance  delivery of the equipment in California to Bescos  has been completed although Datamatic remains bound by certain warranties in the contract. Payment by Bescos of the unpaid balance pursuant to the promissory note was to be at a Datamatic office in Illinois. Bescos is a California resident. He has never been in Florida and is shown to have no agents in Florida. He states generally that litigation in Florida, where he has engaged Florida counsel, would be "a real financial hardship" to him. He was attracted to the purchase by an ad for the Datamatic equipment appearing in a California newspaper. Further contacts with him leading to the execution of the sales agreement were in California. The purchase was arranged on behalf of Datamatic by another corporation which had offices in California. Bescos signed the sales agreement in California and used the purchased equipment in California. Datamatic is shown to do substantial business in California.
Notwithstanding the relative lack of Florida involvement with the transaction in this case as compared to the involvement of other states, notably California, M/S Bremen, as we have said, teaches that Bescos had the burden of establishing that trial in Florida "will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." 407 U.S. at 18, 92 S.Ct. at 1917, 32 L.Ed.2d at 525. He has not done so. No reason has been established why he cannot litigate, and receive a fair trial, in Florida. In any event, as we have indicated, he has not established that any relinquishment of Florida jurisdiction would result in an exercise *1361 of California jurisdiction over the dispute. His showing to us is only that his California counsel has "arranged for actual service of the [California] summons and complaint." Thus, as matters stand, the posture of the case before us is that Florida is not only the first state to acquire personal jurisdiction over this dispute but is the only state to have done so.
We do not reach the argument of Bescos concerning due process which Datamatic also argues. In that regard Bescos argues that he had insufficient "minimum contacts" with Florida. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Nor, as indicated above, do we reach the doctrine of forum non conveniens which Bescos raised in his motion to dismiss. By agreeing to Article XV, Bescos foreclosed those arguments. See Shawmut, 767 F.2d at 1507; McRae, 481 So.2d at 946; Maritime, 455 So.2d at 1122 n. 1. In fact, it seems clear from the Supreme Court's analysis in M/S Bremen that no contacts whatsoever with a contractually agreed upon forum are necessarily required in order to justify enforcement of such an agreement. 407 U.S. at 12, 92 S.Ct. at 1914, 32 L.Ed.2d at 521. A consideration of the third M/S Bremen proviso involving serious inconvenience for trial can include characteristics of due process cases involving whether there have been sufficient minimum contacts of defendants with forum states as well as characteristics of forum non conveniens cases. Nonetheless, the law derived from M/S Bremen on which we base our decision may be characterized as essentially that of the construction and enforceability of contracts. See Gruson, supra, at 155. This essential characterization is not changed by our recognition that there may be due process connotations lurking in the background of this type of case if very serious unfairness exists in a forum which is chosen by contract. In such a situation normally accepted contract principles may be tempered under the third M/S Bremen proviso by types of factors relating to extreme examples of lack of due process and the forum non conveniens doctrine. In other words, if the third M/S Bremen proviso is applicable in a case involving United States parties in a contractually chosen forum in this country, i.e., if a defendant is deprived of his day in court in the chosen forum, that case would be not only subject to the contract law represented by M/S Bremen but also might be thought of as an extreme violation of due process in an inconvenient forum.
For the foregoing reasons the trial court erred in finding that Article XV is void and unenforceable and in finding, as a further reason for dismissing this suit, that Bescos had filed suit in California. Bescos should be required to comply with his agreement to submit to Florida jurisdiction. He had a "heavy burden of proof" of establishing valid reasons for him to escape from the contract. M/S Bremen, 407 U.S. at 17, 92 S.Ct. at 1917, 32 L.Ed.2d at 524. He has not carried that burden.
Reversed and remanded for proceedings consistent herewith.
CAMPBELL, A.C.J., concurs.
HALL, J., concurs in result only.
NOTES
[1] Those clauses are referred to in the Supreme Court's opinion, 456 U.S. at 699, 102 S.Ct. at 2102-03, 72 L.Ed.2d at 499, and are described more fully in the court of appeals opinion. Compagnie des Bauxites de Guinea v. Insurance Co. of North America, 651 F.2d 877, 886 n. 9 (3d Cir.1981).
[2] Datamatic is a Florida corporation. The doctrine of forum non conveniens is not applicable to a suit in Florida in which one party is a Florida resident, Houston v. Caldwell, 359 So.2d 858 (Fla. 1978), and a Florida corporation with its principal place of business in Florida is considered a Florida resident for that purpose. Seaboard Coast Line R.R. v. Swain, 362 So.2d 17 (Fla. 1978). The record does not establish that Florida is Datamatic's principal place of business. We need not address whether the forum non conveniens doctrine could apply to a Florida corporation which has its principal place of business in another state.