DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MASHA K. BACH,** as Personal Representative of
**THE ESTATE OF SEMEN DONSKOY,**
Appellant,

v.

**VLADIGOR INVESTMENTS, INC.,** a California corporation; **IGOR PASKHOVER,** an individual; **VLADIMIR SYELSKY,** individually and as Co-Trustee of the Syelsky Family Living Trust U/D/T March 19, 2002; and **LISA SYELSKY,** individually and as Co-Trustee of the Syelsky Family Living Trust U/D/T March 19, 2002,
Appellees.

No. 4D20-1857

[July 7, 2021]

Appeal of a non-final order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Scott R. Kerner, Judge; L.T. Case No. 50-2020-CA-003982-XXXX-MB.

Jeffrey M. Fauer and John M. Mullin of Tripp Scott, P.A., Fort Lauderdale, for appellant.

Matthew D. Davey of Lex Concordia, PLLC, Miami, for appellees.

PER CURIAM.

Masha K. Bach, in her capacity of personal representative of the estate of Semen Donskoy ("appellant"), appeals the trial court's order granting the appellees' ("the individual defendants" below) amended motion to dismiss appellant's complaint for lack of personal jurisdiction. In the contract that served as the basis for appellant's lawsuit, the parties had agreed to submit themselves to the personal jurisdiction of Florida's courts regarding any disputes. This contract satisfied the requirements of sections 685.101 and 685.102, Florida Statutes (2019), and the test set out by this court in *Corporate Creations Enterprises LLC v. Brian R. Fons Attorney at Law P.C.*, 225 So. 3d 296 (Fla. 4th DCA 2017). We thus reverse the trial court's order and remand for further proceedings.

**Background**

In 2013, Vladigor Investments, Inc. ("Vladigor"), a California corporation, executed a promissory note in favor of decedent Donskoy, at the time a resident of Florida. The decedent, who died in 2017 while living in Broward County, Florida, loaned Vladigor one million dollars to operate its car wash business in San Francisco, California. To secure the note, the individual defendants (Igor Paskhover, Vladimir Syelsky, and Lisa Syelsky, hereinafter "the individual defendants") executed two "Stock Pledge Agreements" in the decedent's favor. Per the agreements, the defendants tendered monthly loan interest payments to the decedent's Florida residence and, after the decedent's death, to his estate which was being administered in Florida.

After the defendants allegedly defaulted on the loan repayments in 2019, appellant filed a complaint in Broward County against Vladigor and the individual defendants, alleging breach of the note and foreclosure of the security interest. Appellant asserted that the individual defendants consented to personal jurisdiction in Florida when they executed the stock pledge agreements.[1] Specifically, appellant noted that the stock pledge agreements included a choice of law provision, stating "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Florida."

The stock pledge agreements also included a forum selection clause as follows:

> Each of the parties hereto consents to personal jurisdiction in the appropriate state or federal court located in Boca Raton, Florida, and agrees that such courts shall be the sole and exclusive forum for the resolution of any dispute between the parties hereto arising out of or in connection with this Agreement or any subsequent transaction contemplated hereby.

---

[1] Along with suing the individual defendants, appellant also sued Vladigor and asserted that Vladigor consented to personal jurisdiction in Florida when it executed the note, as the note stated that Miami-Dade, Broward, or Palm Beach County "shall be the sole and exclusive forum for the resolution of any disputes between the parties hereto arising out of or in connection with this Note or any subsequent transaction contemplated hereby." The circuit court's order denied the motion to dismiss for lack of personal jurisdiction as to Vladigor. This is not at issue in the instant appeal.

However, the stock pledge agreements also stated that if appellant were to "foreclose on the Collateral, and sell, to itself or a third party, or otherwise dispose of the Collateral[,]" that it would be "pursuant to Division 9 of the California Uniform Commercial Code."

The individual defendants filed a motion to dismiss and/or transfer venue, asserting they had no contacts with Florida. They alternatively argued that, even if they had sufficient minimum contacts with Florida to enforce the forum selection clauses in the stock pledge agreements, the court should transfer venue to Palm Beach County given that the stock pledge agreements designated Boca Raton as the exclusive venue.

The Broward trial court deferred ruling as to the dismissal request but transferred venue to Palm Beach County. The individual defendants subsequently filed an amended motion to dismiss for lack of personal jurisdiction in Palm Beach County, again maintaining they did not have sufficient minimum contacts with Florida, and that the choice of law governing appellant's foreclosure of the stock pledge agreements' security interest called for California law to govern. They each attached affidavits in support stating they did not reside in Florida, have no contacts with Florida, did not hold, use, possess, or lease any property in Florida, did not maintain an office in Florida, did not conduct business in Florida, and did not enter into any contract with the decedent in Florida.

Following a hearing, the circuit court entered its order granting the individual defendants' motion to dismiss for lack of personal jurisdiction, offering no explanation of its reasoning. This timely appeal followed.

**Analysis**

We review a circuit court's order on a motion to dismiss for lack of personal jurisdiction *de novo*. *Hamilton v. Hamilton*, 142 So. 3d 969, 971 (Fla. 4th DCA 2014).

The sole issue on appeal is whether the trial court erred in dismissing the individual defendants from appellant's suit for lack of personal jurisdiction. Appellant maintains that the trial court should have exercised personal jurisdiction over the individual defendants based on our decision in *Corporate Creations Enterprises LLC v. Brian R. Fons Attorney at Law P.C.*, 225 So. 3d 296 (Fla. 4th DCA 2017).

In *Corporate Creations*, we reversed a trial court's order dismissing a complaint for lack of personal jurisdiction, finding that "because the parties' contract satisfied the requirements of sections 685.101 and

3

685.102, Florida Statutes (2015), the exercise of personal jurisdiction . . . d[id] not offend due process." *Id.* at 298. This was so because these statutory sections "allow Florida courts to exercise personal jurisdiction in certain circumstances not otherwise provided for under Florida's long arm statute." *Id.* at 301. Further, when these statutory prerequisites are satisfied, "personal jurisdiction may be exercised and the courts may dispense with the more traditional minimum contacts analysis." *Id.* Ultimately, we held that these provisions "allow parties to confer jurisdiction on the courts of Florida by contract alone if certain requirements are met." *Id.* To achieve this, a contract must:

> (1) Include a choice of law provision designating Florida law as the governing law, in whole or in part;
>
> (2) Include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida;
>
> (3) Involve consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000;
>
> (4) Not violate the United States Constitution; and
>
> (5) Either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under the laws of Florida.

*Id.* (citing §§ 685.101, .102, Fla. Stat. (2015), and *Hamilton*, 142 So. 3d at 971–72).

Here, the individual defendants challenged only factor one, choice of law, and factor three, the $250,000 threshold. They did not assert that the contract violated the second, fourth, or fifth factor. Therefore, while we find that all five criteria are met, we write only to address factors one and three.

### A. Choice of Law Provision

This factor requires an examination of whether the contract includes a choice of law provision designating Florida law as the governing law, in whole *or in part*. *Corp. Creations*, 225 So. 3d at 301.

Appellant argues that this factor is satisfied because the stock pledge agreements plainly contain a choice of law provision designating Florida

4

law as the governing law. In opposition, the individual defendants argue that because the stock pledge agreements contain a provision calling for California law to govern any foreclosure attempt of a security interest, which is what appellant sought to do, California law should govern.

Here, paragraph 15 in both stock pledge agreements includes a choice of law provision designating Florida law as the governing law, stating: "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Florida."

We emphasize that this factor is satisfied when Florida law is designated as the governing law "in whole, *or in part.*" *Id.* Here, despite the language pointing to California law as the governing law as it related to foreclosure of a security interest, the plain language within the choice of law provision stating that Florida law would govern the agreement demonstrates that Florida law would, at the very least, govern in part. Thus, we find that this factor is met.

### B. $250,000 Threshold

Turning to the other jurisdictional threshold test at issue, the third factor requires an examination of whether the contract "[i]nvolve[s] consideration of not less than $250,000 or relate[s] to an obligation arising out of a transaction involving in the aggregate not less than $250,000[.]" *Id.*

Appellant argues that this factor is met because the stock pledge agreements and the note are "inextricably related" since the stock pledge agreements secure the one-million-dollar note. In contrast, the individual defendants assert that this factor is not met because the individual defendants are parties to only the stock pledge agreements, which involve consideration of less than $250,000. They further argue that *Corporate Creations* is distinguishable because it involved an operating agreement and an ownership redemption agreement, not a promissory note and a stock pledge agreement, and further, that the defendants in *Corporate Creations* were parties to both contracts, while here, the individual defendants were not parties to the note.

The individual defendants' attempt at distinguishing *Corporate Creations* falls short. In *Corporate Creations,* a threshold issue was whether the operating agreement or ownership redemption agreement was at issue in the lawsuit because only the operating agreement contained a choice of law and venue provision. *Corp. Creations,* 225 So. 3d at 299. We

5

determined that the complaint was based upon both agreements because the two agreements would not exist without each other. *Id.* at 300.

We apply the same reasoning in the instant case, even though this case involves note and stock pledge agreements versus an operating agreement and ownership redemption agreement. Here, the first recital of each pledge agreement states:

> A. Concurrently herewith, VLADIGOR INVESTMENTS, INC., a California corporation ("Vladigor" or the "Company") has executed that certain Promissory Note to Secured Party of even date in the principal amount of One Million Dollars ($1,000,000.00) ("the Note"). *As a condition of Secured Party's willingness to agree to the terms of the Note, Secured Party required Pledgor, as a major shareholder of Vladigor, to secure the repayment of the Note by granting Secured Party a security interest in certain shares of Vladigor owned by Pledgor.*

(emphasis added). Further, paragraph 1.1 of each pledge agreement states, in pertinent part: "1.1 Pledge. Pledgor hereby pledges, grants a security interest in, assigns, transfers and delivers unto Secured Party and its successors and assigns, *as collateral security for the payment and performance in full when due by Vladigor of [] its obligations under the Note* . . . ." (emphases added). Additionally, paragraph 2 of each pledge agreement states: "2. Obligations Secured. This Agreement is made and the pledge herein is given to secure Vladigor's performance and compliance with all of the terms and conditions of the Note (the "Pledgor Obligations")."

Thus, consistent with the reasoning in *Corporate Creations*, based on the quoted provisions above, the note would not have existed without the stock pledge agreements, as the stock pledge agreements specifically secure, and indeed relate to, the one-million-dollar note. Further, the decedent's willingness to agree to the terms of the note was conditioned on the stock pledge agreements, indicating again that the note would not have existed but for the stock pledge agreements.

Accordingly, this factor is met because the stock pledge agreements "related to an obligation arising out of a transaction involving" one-million dollars—well over the $250,000 threshold.

**Conclusion**

6

Appellant satisfied the requirements of sections 685.101 and 685.102, Florida Statutes (2019), by establishing that the parties voluntarily conferred jurisdiction on the courts of Florida by contract. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[P]articularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process.") (internal citations omitted); *Glob. Satellite Commc'n Co. v. Sudline*, 849 So. 2d 466, 469 (Fla. 4th DCA 2003) ("[W]here a requirement to pay money in Florida has been coupled with a Florida venue selection clause in a contract, courts have held that the nonresident defendant should reasonably expect to be haled into court in Florida.") (emphasis omitted).

Accordingly, the traditional minimum contacts analysis was unnecessary, and the trial court should have exercised personal jurisdiction over the individual defendants. We thus reverse the trial court's order dismissing appellant's complaint for lack of personal jurisdiction as to the individual defendants.

*Reversed and remanded for further proceedings.*

WARNER, CIKLIN and FORST, JJ., concur.

\*     \*     \*

**Not final until disposition of timely filed motion for rehearing.**